FILED
2016 Jul-06  AM 08:25
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| E.E., et al., | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 7:15-cv-01370-LSC |
| TUSCALOOSA CITY BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) ) | |

## Memorandum of Opinion

Plaintiffs E.E. and T.E. filed this action, as parents and next friend of N.E., against Tuscaloosa City Board of Education ("TCBOE") appealing a due process decision arising from a hearing conducted under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). Before the Court are Plaintiffs' motion for summary judgment (Doc. 15) and TCBOE's motion for summary judgment. (Doc. 16.) For the reasons stated below, Plaintiffs' motion for summary judgment (Doc. 15) is due to be denied and TCBOE's motion for summary judgment (Doc. 16) is due to be granted.

# I.   BACKGROUND

## a.   Factual Background

N.E. is a rising sixth-grader enrolled in the Tuscaloosa City School System, however she was in the fourth and fifth grade throughout the period relevant to this action. E.E. and T.E. adopted N.E. when she was four years old and, at the age of five, N.E. was diagnosed with reactive attachment disorder ("RAD"). This disorder, traced back to pre-adoption events that N.E. experienced, results in trauma, disillusion, and mistrust of others, as well as other behavioral problems. At home, N.E.'s parents find her disruptive, manipulative, unremorseful, and unable to understand the consequences of behaviors such as lying and stealing small items. Her parents contend that N.E. also has academic difficulties as a result of the disorder.

During her fourth-grade year, E.E. and T.E. began suspecting that N.E. was lying about how much she was reading as part of her homework and they believed that N.E. was struggling with math, science, spelling, and understanding certain literary concepts. They also believed that N.E. was cheating and copying classmates' work. Thus, they requested that TCBOE retain her in the fourth grade the following school year.  The school system disagreed that retention would be beneficial and instead proposed response to intervention ("RTI") through

assembling a problem solving team ("PST"), which was designed to implement intervention strategies within N.E.'s normal curriculum and monitor N.E.'s academic performance, specifically in the areas of reading and math. After the parents received written notification that the PST would focus on reading and math, they heard nothing else regarding the PST, which apparently met in February or March of 2014.

During that meeting, the PST looked at information provided by N.E.'s fourth-grade teacher, indicating that N.E.'s attendance record was "great," stating that N.E. could be argumentative and sneaky, but had no office referrals during the fourth grade, and stating that, according to the teacher, N.E.'s grades were average. The teacher stated that she did not believe N.E. needed any change in curriculum or additional services. Additionally, the PST looked at N.E.'s third-grade Alabama Reading and Math Test scores, which showed that N.E. was above average in math and met the State Department of Education standards in reading. Further, the team looked at N.E.'s fourth-grade Classworks assessment, which showed that N.E. was proficient in language arts and math, and it looked at N.E.'s ACT Aspire Ready Range of Proficiency assessment, which showed that N.E. was proficient in reading and math.

On May 23, 2014, E.E. inquired about the status of the RTI and requested the information and scores reviewed by the PST and, after she did not receive that information, she made a second request in June of 2014. E.E. did not receive that information until October 6, 2014. In the meantime, the parents and the school continued to disagree as to whether N.E. should be retained in the fourth grade. The parents eventually agreed to allow N.E. to start school in the fifth grade and, in early August, E.E. requested a special education evaluation of N.E looking at the disability category of specific learning disability.

TCBOE held a special education referral meeting on August 18, 2014, and during that meeting the referral team decided to initiate an evaluation for special education to examine whether N.E.'s behavioral difficulties were impacting her academic performance. That special education evaluation was conducted throughout the fall to prepare for the special education eligibility meeting scheduled for October 1, 2014. That evaluation included looking at N.E.'s attendance, academic, and in-school behavioral history, an August 14 observation of N.E. completed by the guidance counselor that showed N.E. working and answering questions appropriately, and interviews of N.E.'s teachers, all of whom stated that any behavioral issues N.E. had in school were not impacting her academic performance. School personnel also conducted an Oral Written Language

Scales ("OWLS") assessment, testing overall language, listening comprehension, and oral expression, with N.E. scoring above average in all three categories. Further, a behavioral evaluation was conducted, which included the completion of two behavioral scales, one by N.E.'s homeroom teacher (who had only taught N.E. for five weeks) and one by T.E., completion of a BECK Youth Inventory, and the BENDER Gestalt II. N.E.'s scores from this behavioral evaluation were within an average range.[1] Further, the eligibility team reviewed samples of N.E.'s school work and read a packet of information regarding RAD. While not considered or acknowledged by the eligibility team, a second observation form had been completed by a special education teacher on August 12, 2014. That observation form indicated that N.E. was unable to utilize the day's lesson to complete math problems, and N.E. had to be reminded how to solve math problems despite having prior instruction on those problems. The parents were not told that this evaluation existed, and the evaluation did not surface until after litigation began.

The special education eligibility meeting was held on October 1 and, after discussion, the attendees (other than E.E.) agreed that N.E. was not eligible for special education services. While E.E. initially testified that she left the meeting

---

[1] E.E. disagreed with these findings, contending that if each of the sub-scales in these evaluations was first standardized and then added as a total, the scores were clinically significant. When the eligibility team first added the sub-scores together and then the sum number was standardized, the scores were within average range.

angry, she later admitted that she and her husband told the school district superintendent that they ultimately did not disagree with the determination that N.E. did not qualify for special education as a learning disabled student.

In mid-November of 2014, the parents met with certain TCBOE personnel and during the meeting the parents agreed to the superintendent's suggestion that N.E. be evaluated for the special education disability category of emotional disability. Soon after, school personnel told E.E. that the data utilized during the October 1 eligibility meeting would be sufficient to determine whether to refer N.E. for evaluation for emotional disability, but in early December the parents were told that the school would obtain additional behavioral scales. However, the referral team ultimately decided that additional scales were not needed. The referral meeting to consider a referral for a special education evaluation under the category of emotional disability was held on December 12, 2014. At the end of the three-hour-long meeting, the referral team decided not to refer N.E. for a special education evaluation, despite E.E.'s objections. When the decision not to refer N.E. for evaluation was made, E.E. asked if a new PST plan would be provided, but the referral team declined to refer N.E. back to a PST. Soon thereafter, the parents filed a complaint for due process.

### b.    Procedural History—Due Process Hearing

In filing the complaint for due process, the parents sought the following relief: (1) that the Hearing Officer find N.E. eligible for services under the disability category of emotional disability, (2) that the Hearing Officer rule that TCBOE's testing of N.E. was incomplete and not sufficiently comprehensive, and (3) that the Hearing Officer rule that TCBOE must pay for an independent educational evaluation ("IEE"). In preparation for the due process hearing, the parents hired Dr. John Goff to perform the IEE and appear as an expert witness. Dr. Goff's testing of N.E. led him to conclude, among other things, that N.E.'s unusual style of language and communication (a condition often associated with RAD) may be a source of N.E.'s difficulties, and he stated that N.E. should probably be evaluated by a skilled speech and language pathologist to explore this potential issue.

During the due process hearing, the parents pointed to procedural violations that they believed TCBOE committed. Those violations included (1) the failure of the eligibility team to consider the observation form that showed that N.E. had difficulty understanding math concepts and strategies; (2) TCBOE's failure to assemble a PST after deciding not to refer N.E. for evaluation for emotional disability; (3) the reversal of the decision to consider additional behavioral scales when determining whether to refer N.E. for evaluation for emotional disability; (4) the eligibility team's refusal to consider sub-scales in its behavioral assessment that

would have supported eligibility for special education services; (5) the completion of a behavioral scale by a teacher who had known N.E. for less than six weeks; and (6) TCBOE's delay in providing the parents with the information used by the first PST in early 2014. The hearing lasted six days, with E.E. and relevant school teachers and employees giving testimony.

In the opinion's numbered specific findings, the Hearing Officer held that all of the alleged procedural violations, with the exception of the second (the failure to assemble a PST), were de minimus. As for TCBOE's failure to assemble a PST after deciding not to refer N.E. for evaluation for emotional disability, the Hearing Officer directed TCBOE to convene a PST. Further, the Hearing Officer pointed to Dr. Goff's conclusion regarding the need for a speech-language evaluation, and ordered TCBOE to utilize a speech language pathologist to evaluate N.E. in the areas of articulation and language. Finally, the Hearing Officer found that the parents were not entitled to reimbursement for Dr. Goff's IEE, stating that TCBOE's evaluation of N.E. was adequate under Alabama's Administrative Code.

## II.   STANDARD OF REVIEW

The "principal purpose of the [IDEA] is 'to assure that all children with disabilities have available to them . . . a free and appropriate public education ["FAPE"] which emphasizes special education and related services designed to

meet the handicapped child's unique needs, . . . [and to ensure] that the rights of handicapped children and their parents or guardians are protected." *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting 20 U.S.C. § 1400(c)). In order to "carry out these objectives, the IDEA provides procedural safeguards." *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 311–12 (1988)). One of these procedural safeguards is the "opportunity for an 'impartial due process hearing.'" *Id.* "Any party aggrieved by the resulting state administrative findings and decision has the right to file suit in the United States District Court regardless of the amount in controversy." *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 856 (11th Cir. 1988). "In that lawsuit, 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Id.* (quoting 20 U.S.C. § 1415(e)(2)).

"[T]he IDEA provision for judicial review has been described as 'puzzling' and 'somewhat confusing.'" *Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1297 (11th Cir. 2000) (citing *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995); *Jefferson Cnty. Bd. of Ed. v. Ala. Dep't of Ed.*, 853 F.2d 853, 856 (11th Cir. 1988)). Once an IDEA case is before the district court, the

"usual F.R. Civ. P. 56 summary judgment principles do not apply." *Loren v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003). Instead, summary judgment serves as "a procedural vehicle requiring [the district judge] to decide . . . [the IDEA] action on the basis of the administrative record." *Id.* at 1313 n.4 (quoting *Suzawith v. Green Bay Area Sch. Dist.*, 132 F. Supp. 2d 718, 724 (E.D. Wis. 2000)). The district court may not "substitute its own judgment on sound educational policy for those made at the state administrative level." *Jefferson County Bd. of Educ.*, 853 F.2d at 856 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). Rather, "the role of the district court is simply to '*review* the administrative determinations.'" *Id.* at 857. (quoting *Manecke v. School Bd.*, 762 F.2d 912, 919 (11th Cir. 1985) (emphasis in original), cert. denied, 474 U.S. 1062 (1986)).

The Eleventh Circuit has emphasized that courts "owe some judicial deference to local administrative agency judgments." *Loren*, 349 F.3d at 1314 n.5 (citing *Deal v. Hamilton County Dept. of Educ.*, 259 F. Supp. 2d 687, 691– 92 (E.D. Tenn. 2003)). This is particularly true when matters call for educational expertise. *Id.* Therefore, administrative findings of fact "are considered to be prima facie correct." *Id.* If a reviewing court fails to adhere to administrative findings of fact, "it is obliged to explain why." *Id.* However, the "extent of deference to be given

the administrative findings of fact," nonetheless remains "an issue left to the discretion of the district court." *Jefferson County Bd. of Educ.*, 853 F.2d at 857. Similarly, "the extent of deference to be given to the administrative decision is left to the sound discretion of the district court, which must consider the administrative findings but is free to accept or reject them." *Walker County Sch. Dist v. Bennett*, 203 F.3d 1293, 1297–98 (11th Cir. 2000).

## III. DISCUSSION

### A.    Alleged Procedural Violations

Plaintiffs first contend that the Hearing Officer erred in finding that certain procedural violations were de minimus and did not deprive N.E. of a FAPE. "In evaluating whether a procedural defect has deprived a student of a FAPE, the Court must consider the impact of the procedural defect, and not merely the defect *per se*." *Weiss by Weiss v. School Bd. of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998); 20 U.S.C. § 1415(f)(3)(E)(ii) ("In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies [1] impeded the child's right to a free public education; [2] significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or [3] caused a deprivation of

educational benefits."). Plaintiffs contend that these procedural violations were such that they were denied a fair and meaningful opportunity to participate in determining N.E.'s educational needs. *See, e.g.*, *Weiss by Weiss*, 141 F.3d at 997 ("Although the IDEA envisions full parental participation in the development of the [individualized education program], the Act does not mandate such participation in every aspect of the educational process."); Ala. Admin. Code 290-8-9-.08(5) ("Parents must be provided written notice and an opportunity to participate in meetings regarding identification, evaluation, educational placement, and the provision of FAPE to their child.").

The first procedural violation to which Plaintiffs point is the Hearing Officer's second specific finding, which in relevant part stated the following:

> While there may have been significant fragmentation of information supplied at the eligibility meeting . . . such omissions are not such as to compel the conclusion that had that information been shared with the team a different result would have been reached.

(Record at Page 516.) Plaintiffs also point to the Hearing Officer's fourth specific finding, which stated as follows:

> All other **alleged** procedural violations (reversal of the suggestion of additional behavior scales, refusal to consider existing behavior sub-scales that supported eligibility, insufficient weeks of knowing a child before completing behavior scale, failure to include a parentally preferred observation in the special education evaluation, delay in providing parents PST results, etc.) were <u>de minimus</u>.

(Record at Page 519.) (emphasis in original). Plaintiffs juxtapose these two findings with TCBOE representatives' testimony given during the due process hearing that information not included in the eligibility report may have been helpful in making the eligibility determination. (Record at Page 151, 295.) Plaintiffs' contentions here are twofold: First, Plaintiffs make arguments specific to the fact that the August 12, 2014 structured observation by a special education teacher (which supported E.E.'s concerns that N.E. had trouble comprehending math lessons) was not considered at the October 1, 2014 eligibility meeting. Second, Plaintiffs contend generally that the information considered at the October 1, 2014 eligibility meeting was so lacking that the eligibility team could not have reached an accurate assessment, thus denying their right to participate in the decision-making process and denying N.E. a FAPE.

As to Plaintiffs' first argument regarding the failure to consider the August 12, 2014 structured observation at the eligibility meeting, the Hearing Officer found that this failure was a de minimus procedural violation because it did not prevent parental participation, deny N.E.'s a FAPE, or deprive N.E. of educational benefit. Plaintiffs challenge the finding that the violation was de minimus.[2]

---

[2] As part of their argument, Plaintiffs contend that the Hearing Officer made contradictory statements regarding E.E.'s failure to inquire about why the special education teacher was not a member of the eligibility team. The Hearing Officer noted that the special education teacher,

The Hearing Officer correctly found that this procedural violation did not prevent parental participation in evaluating N.E.'s eligibility for special education services, deny N.E. a FAPE, or deprive N.E. of educational benefit. The evaluative criteria that the eligibility team must consider when determining whether a child has a specific learning disability (the disability that the eligibility team was evaluating at that October meeting)[3] permits the use of only one classroom observation. Ala. Admin. Code 290-8-9-.03(10)(d)(5)(i) ("The group responsible for determining whether a child has a specific learning disability must decide to: (I) *Use information from an observation in routine classroom instruction and monitoring of the child's performance that was done before the child was referred for an evaluation*; or

---

who conducted the unused observation, was a member of the referral for evaluation team, which E.E. attended, and stated that

> "[b]ased on her testimony and complete knowledge of the records and events, [E.E.] certainly could have inquired as to that individual's absence at the eligibility meeting. That [E.E.] did not do so reveals that the special education teacher's participation at the eligibility meeting was not considered by [E.E.] to be such a substantial component of the eligibility determination that the conditions for relief contained in [IDEA's procedural safeguards] exist."

(Record at Page 505.) Plaintiffs contend that this finding directly contradicts the Hearing Officer's statement that "[E.E.] testified that she was not told about the observation by the special education teacher," because E.E. would not have known to ask about the special education teacher's failure to attend the eligibility meeting if E.E. did not know that the observation existed. (Record at Page 504.) While perhaps the Hearing Officer made contradictory statements, his finding that the procedural violation here was de minimus was proper, as discussed below, regardless of whether the Hearing Officer found that E.E. should have inquired about the teacher's absence at the meeting.

[3] Plaintiffs do not appeal any portion of the Hearing Officer's decision regarding his findings that this October eligibility meeting was to address whether N.E. had a specific learning disability, as opposed to some other disability such as an emotional disability.

(II) Have at least one member of the group conduct an observation of the child's academic performance in the regular classroom after the child has been referred for an evaluation and parental consent is obtained."). Certainly, as testimony showed, the more information the eligibility team has in front of it to consider the more informed their decision will be. However, other than a broad statement that if the eligibility team had used the August 12 observation then it "would have probably reached a different eligibility result," Plaintiffs do not point to any evidence in the administrative record to support that assumption.[4] Thus, the Hearing Officer correctly found that this procedural violation had a de minimus effect.

Plaintiffs also contend generally that the information considered at the October 1, 2014 eligibility meeting was so lacking that the eligibility team could not have reached an accurate eligibility assessment, despite the Hearing Officer's finding that all other alleged procedural violations were de minimus. The Court will address those alleged violations individually and then assess whether they, along

---

[4] To the extent that Plaintiffs contend that the special education teacher that conducted the unused observation should have attended the eligibility meeting, they are incorrect. The Alabama Administrative Code requires that the eligibility team "[b]e composed of a team of qualified professionals including the parents." Ala. Admin. Code 290-8-9-.04(1)(a). When determining eligibility for children evaluated for a specific learning disability, the eligibility team must also include the child's teacher and "[a]t least one person qualified to conduct individual diagnostic examinations of children, such as a school psychologist." Ala. Admin. Code 290-8-9-.03(10)(b)(2). Here the eligibility team included E.E., N.E.'s teacher, a different special education teacher, the principal of N.E.'s school, and the school psychologist. The special education teacher who conducted the unused observation was under no obligation to attend the eligibility meeting.

with the failure to use the special education teacher's classroom observation, denied the parents an opportunity to participate in the decision-making process, denied N.E. a FAPE, or deprived N.E. of an educational benefit.

The first procedural violation listed was the December 12, 2014 referral team's decision not to obtain additional behavioral scales before evaluating N.E. for referral for disability evaluation. The referral team made this decision after the supervisor of the special education curriculum suggested to E.E. that the school system would obtain additional scales before making the referral determination. (Record at Page 507–08.) The Hearing Officer noted that the December referral team was conducting what the Alabama Administrative Code deems a reevaluation of N.E.'s needs. Alabama Admin. Code 209-8-9-.02(6)(a); (Record at Page 508). As it was conducting a reevaluation, the team had the option to find that there was no need for additional data to determine N.E.'s educational needs. Ala. Admin. Code 209-8-9-.02(6)(d).[5] Further, the team had the power to determine, on a case-by-case basis, whether supplemental evaluations beyond those minimally required by the administrative code were needed. Ala. Admin. Code 290-8-9-.03.

---

[5] While the administrative code allows the team to determine that no additional data is needed, the code also requires the team to provide written notice to the child's parents of that determination. Ala. Admin. Code 290-8-9-.02(6)(d). However, neither party raises this issue of notice and the Court thus declines to address it.

The second alleged procedural violation was the evaluation team's refusal to consider behavioral sub-scales that supported eligibility if each sub-score was first standardized and then added as a total, as opposed to being totaled and then standardized. Plaintiffs fail to address why the team's refusal constituted a procedural violation or otherwise was improper.

The third alleged procedural violation the Hearing Officer listed was the use of a behavioral scale completed by a teacher who had not known N.E. for the amount of time required by the Alabama Regulatory Code. Specifically, Plaintiffs contend that the teacher who completed the behavior scale had known N.E. for five weeks when the regulations require that the individual who competes the scale know the subject child for at least six weeks. The Hearing Officer concluded that this one week deficit was a de minimus procedural violation, because that teacher had daily contact with the child. The Hearing Officer pointed to the guidance manual for that behavior scale, which stated that the person competing that scale can know the child for less than six weeks in some instances, such as when the individual has had one month of daily contact with the child. While that guidance manual is not part of the Alabama Regulatory Code, it indicates that this violation did not prevent the parents from meaningful participation, deny N.E. a FAPE, or deprive N.E. of an educational benefit.

The fourth alleged procedural violation was TCBOE's delay in providing Plaintiffs the information the PST had reviewed during an early-2014 PST meeting. E.E. requested the information on May 23, 2014, and renewed her request in June of 2014. Plaintiffs did not receive that information until October 6, 2014. That information indicated that N.E. was proficient in reading and math, close to proficient in writing, was achieving above standards set by the State Department of Education, and was proficient in general academics from the second grade through the fourth grade. TCBOE's delay in providing that information was a procedural violation. Ala. Admin. Code 290-8-9-.08(2)(c) (stating that parents may review all educational records relating to identification of their child as to the provision of a FAPE and must be given the opportunity to review those records "without unnecessary delay (not more than 45 days after the request has been made)"). However, that procedural violation did not deny the parents meaningful participation, deny N.E. a FAPE, or deprive N.E. of an educational benefit, as all of those records indicated that N.E. was performing adequately in her current curriculum and was not in need of a different educational placement.

These four alleged procedural violations, along with the failure to use the August 12 observation, taken individually or looked at holistically, were not so inadequate as to have impeded N.E.'s parents' opportunity to participate, deprived

N.E. of a FAPE, or deprived her of educational benefits. The only procedural violation that, had it not occurred, could reasonably be said to have supported Plaintiffs' position that N.E. was not fully understanding lessons was the eligibility team's failure to consider the special education teacher's observation form. However, Plaintiffs fail to point to any evidence in the record showing that this additional observation would have changed the eligibility team's decision that N.E. did not have a special education disability, especially in light of the fact that E.E. indicated to TCBOE that she agreed with the eligibility team's determination that N.E. did not have a specific learning disability. (Record at Page 122–23.) Thus, the Hearing Officer's findings and determinations regarding these procedural violations is due to be affirmed.

### B.   Reimbursement for Costs of Independent Educational Evaluation

Plaintiffs further appeal the Hearing Officer's determination that they were not entitled to reimbursement for the IEE they obtained for N.E. Under the Alabama Administrative Code, parents have a right to obtain an IEE of their child. Further, "[a] parent has the right to an [IEE] at public expense if the parent disagrees with an individual evaluation obtained by the public agency." However, if the public agency believes that its evaluation was appropriate and thus no IEE is needed, it must request a due process hearing to determine whether its evaluation

was in fact adequate. Ala. Admin. Code 290-8-9-.02(4)(d) ("If the final decision in a due process hearing is that the agency's evaluation is appropriate, the parent still has the right to an [IEE], but not at public expense.").

Plaintiffs contend that the Hearing Officer arrived at inconsistent conclusions by finding that TCBOE met the standards for evaluating N.E. but then directing TCBOE to conduct a speech-language evaluation of N.E. in the areas of articulation and language through the use of a speech language pathologist. (Record at Page 519–20.) The Hearing Officer then directed TCBOE to ensure that the PST team convening after the due process hearing considered that speech language pathologist's report in making its determinations. (Record at Page 519.)

In other words, Plaintiffs contend that TCBOE's evaluation of N.E. could not meet the Alabama Regulatory Code requirement that all special education evaluations be "sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been identified." Ala. Admin. Code 290-8-9-.02(1)(t); *see also* Ala. Admin. Code 290-8-9-.02(1)(g) ("The child must be assessed in all areas related to the suspected disability including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities."). While Dr. Goff's IEE

appears to have examined N.E.'s manner of speech and manner of communication in a more in-depth manner, TCBOE did conduct an Oral Written Language Scales ("OWLS") assessment, which tested overall language, listening comprehension, and oral expression. (Record at Page 803.) The results from the OWLS assessment showed that N.E. scored above average in all three categories. (Record at Page 803.) While Plaintiffs' IEE may have conducted a more extensive evaluation that unearthed a possible speech disorder, the Hearing Officer did not err in finding that TCBOE's evaluation of N.E. was appropriate in its comprehensiveness. Thus, the Hearing Officer's determination that Plaintiffs are not entitled to reimbursement for the IEE is due to be affirmed.

## C.    The Prevailing Party

The IDEA permits the award of reasonable attorneys' fees to the parent of a child with a disability if they were the prevailing party in the litigation. 20 U.S.C. § 1415(i)(3)(B)(i)(I). While the Act fails to provide a definition of "prevailing party," federal courts have applied the same definition as is applied to other federal civil rights statutes using that term. *See, e.g.*, *Mitten By & Through Mitten v. Muscogee County School Dist.*, 877 F.2d 932, 936 (11th Cir. 1989) (stating that "the term 'prevailing party' [must] be given the same meaning it was given by the United States Supreme Court, in *Hensley v. Eckerhart*, which employed the significant

relief standard" to the term in the context of a § 1988 claim); *Drennan v. Pulaski County Special School Dist.*, 458 F.3d 755, 757 (8th Cir. 2006) (applying the Supreme Court's definition of "prevailing party" under § 1988 to an IDEA claim).

The "prevailing party" test applicable under § 1988, and thus applicable under IDEA, has been stated as follows: "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). Further, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." *Farrar*, 506 U.S. at 111; *see also Drennan v. Pulaski County Special School Dist.*, 458 F.3d 755, 757 (8th Cir. 2006) (applying *Farrar*'s language when determining whether the plaintiffs were the "prevailing party" under IDEA).

Here, Plaintiffs contend that they are a prevailing party even if this Court affirms the Hearing Officer's findings because the Hearing Officer concluded that TCBOE deprived N.E. of educational benefits by failing to refer her back to a PST. As a result, the Hearing Officer directed TCBOE to conduct a speech-language evaluation of N.E. and to assemble a PST to consider the results of that evaluation and determine what intervention strategies, if any, needed to be implemented for N.E.'s benefit.

However, the record in this case indicates that Plaintiffs sought the following relief: (1) that the Hearing Officer find N.E. eligible for services under the disability category of emotional disability, (2) that the Hearing Officer rule that TCBOE's testing of N.E. was incomplete and not sufficiently comprehensive, and (3) that the Hearing Officer order TCBOE to reimburse Plaintiffs for the cost of the IEE. (Record at Page 450.) Plaintiffs did not request any ruling directing TCBOE to refer N.E. to a PST or a ruling that N.E. be evaluated for eligibility for services under the category of speech or language impairment. Thus, the Court cannot say that Plaintiffs prevailed on the merits of their claim, which instead requested services under the category of emotional disability and for reimbursement for the IEE.[6]

Further, while the Hearing Officer's order modified the TCBOE's behavior by requiring it to convene a PST team and conduct a speech-language evaluation, this modification did not directly benefit N.E. The record is bereft of, and parties

---

[6] Plaintiffs offer a second variation of a test at least one court has used to determine whether a party is a "prevailing party" under IDEA, offering a two-part test of "(1) 'whether plaintiffs achieved relief;' and (2) 'whether there is a causal connection between the litigation and the relief from the defendant.'" *D.B. v. Ocean Tp. Bd. of Educ.*, 985 F. Supp. 457, 540 *(D.N.J. 1997) (quoting *Wheeler v. Towanda Area Sch. Dist.*, 950, F.2d 128, 131 (3d Cir. 1991)). The first prong of this test "requires only that the plaintiff 'achieve[] some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment.'" *Id.* (alteration in original) (quoting *Wheeler*, 950 F.2d at 131). Even under this language, Plaintiffs here did not achieve any of the benefit sought in their due process action, instead achieving relief arising from a procedural violation that Plaintiffs failed to raise.

cannot point to, any indication that the PST, considering the results of that speech-language evaluation, arrived at findings that changed N.E.'s educational plan. Instead, Plaintiffs contend that TCBOE's failure to refer N.E. to a PST was significant because "[t]he Hearing Officer's order itself probably will be viewed by other school systems and will serve to change policy with this school district in the future after a student is rejected for special education services." (Doc. 15-1 at Page 31.) However, assuming that this contention is true, Plaintiffs have failed to show that the relief they secured directly benefitted N.E. Thus, because Plaintiffs did not prevail on the merits of their claim and because the Hearing Officer's decision did not materially alter TCBOE's behavior in a manner that directly benefited N.E., Plaintiffs are not the prevailing party and are thus not entitled to attorneys' fees.

## IV.  CONCLUSION

For the reasons stated above, TCBOE's motion for summary judgment (Doc. 16) is due to be GRANTED and Plaintiffs' motion for summary judgment (Doc. 15) is due to be DENIED. The Hearing Officer's findings and determinations challenged by Plaintiffs are due to be AFFIRMED. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON JULY 6, 2016.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184